[Civ. No. 5155.   Fourth Dist.   July 2, 1956.]

TOMMY N. NEFF, Appellant, v. IMPERIAL IRRIGATION DISTRICT, Respondent.

Dickenson, Sattinger & McKee for Appellant.

Horton & Knox and James H. Carter for Respondent.

MUSSELL, J.—Appellant seeks to recover damages for injury to his cotton crop. His complaint contains two causes of action, in the first of which he alleges that on or about June 16 and 22, 1953, the defendant irrigation district, a political subdivision of the State of California, through its employees, sprayed with "2-4-D," or other chemical, or otherwise treated the lands of the Filaree drain and land adjacent thereto in Imperial County; that these chemicals drifted,

spread or were carried by air currents onto the lands which plaintiff was farming under lease and killed and injured the cotton plants thereon, to his damage. The second cause of action contains substantially the same allegations as in the first, with the addition of allegations in general terms that there was negligence on the part of the defendant in the use of the chemicals.

It was stipulated by the parties that the Imperial Irrigation District was acting in its governmental capacity, that the question of sovereign immunity be argued first, and that the trial court render its decision on this question before proceeding with a determination of the other issues in the case. The court, after arguments of counsel, stated that judgment would have to be for the defendants on the pleadings and signed and entered a formal judgment of nonsuit. Plaintiff appeals and states that the sole issue in this case is whether the acts of the district resulting in damage to his crop constituted the taking or damaging of private property for public use without just compensation, under article I, section 14, of the Constitution of the State of California. We conclude that the question must be answered in the negative and that the trial court correctly based its judgment on the decisions in *McNeil* v. *City of Montague,* 124 Cal.App.2d 326 [268 P.2d 497] and *Miller* v. *City of Palo Alto,* 208 Cal. 74 [280 P. 108].

In the McNeil case the appellant sought to recover damages for property alleged to have been destroyed or damaged by fire which spread from one set by agents of the city while they were burning dry grass near the city hall for the purposes of fire suppression and weed control. It was appellant's contention there, as here, that the facts alleged showed a violation of section 14 of article I of the state Constitution providing that "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner, . . ." The demurrer to the complaint was sustained without leave to amend and judgment for defendants was entered therein and affirmed on appeal.

In the Miller case, the employees of the defendant city had used a vacant lot near the property of the plaintiff for the burning of garbage and had carelessly permitted the fire to escape and damage the plaintiff's property. It was contended that this constituted the taking or damaging of private

property for public use. The court there held that there was no merit in plaintiff's contention and that:

"A public use is 'a use which concerns the whole community as distinguished from a particular individual or a particular number of individuals; public usefulness, utility or advantage; or what is productive of general benefit; a use by or for the government, the general public or some portion of it.' "

We are of the opinion that appellant's contention herein is without merit for the same reasons as those stated in the two cases cited. These cases have been cited and approved in *Bauer* v. *County of Ventura,* 45 Cal.2d 276, 286 [289 P.2d 1]. In that case the action was for damages to property resulting from overflow of water from a ditch constructed by the defendant county and a storm drain maintenance district, and the court reversed a judgment of dismissal as to the defendant county. The damage to plaintiff's property resulted from the raising of the ditch bank and the placing thereon of debris and a pipe which caused water to overflow on plaintiff's land. The court said that the raising of the ditch bank appeared to be a deliberate act carrying with it the purpose of fulfilling one or another of the public objects of the project as a whole and that the damage to plaintiff's property resulted not from immediate carelessness but from a failure to appreciate the probability that, functioning as deliberately conceived, the public improvement as altered and maintained did result in some damage to private property. The court further said (p. 286):

"Damage resulting from negligence in the routine operation having no relation to the function of the project as conceived is not within the scope of the rule applied in the present case. (See *Miller* v. *City of Palo Alto,* 208 Cal. 74 [280 P. 108]; *McNeil* v. *City of Montague,* 124 Cal.App.2d 326 [268 P.2d 497]; *Western Assur. Co.* v. *Sacramento & S. J. Drainage Dist.,* 72 Cal.App. 68 [237 P. 59]; anno. 2 A.L.R.2d 677.)

"The plaintiffs, as stated, also allege that the collection of debris and stumps in the ditch raised an obstruction which caused the water to back up on their land. If this was due to the mere negligent operation of the ditch system, it is not within the scope of liability as a taking or damaging for a public use under section 14. If, on the other hand, the obstruction of the ditch was in some way part of the plan of maintenance or construction, then liability would attach because the means of carrying out the plan of construction and maintenance are immaterial." (Citing cases.)

■ In the instant case it appears that the damage to plaintiff's crop was the result of careless application of the chemical used to exterminate weeds on defendant's property and did not amount to taking of plaintiff's property for a public use. ■■ As is said in the Bauer case (p. 284):

" 'Public use' within the meaning of section 14 is defined as·a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government. (*Gilmer* v. *Lime Point, supra,* 18 Cal. 229.) To make a use public in character, a duty must fall on the person or corporation holding the property appropriated by eminent domain to furnish the public with the use intended and the public must be entitled to use or enjoy the property taken." (Citing cases.)

In *Harris* v. *United States,* 205 F.2d 765, the United States Fish and Wildlife Service caused an area under its control to be sprayed with a chemical herbicide by airplane and some of the chemical drifted onto plaintiff's crops, causing damages. The court there said, at page 767:

"And the adjudicated cases have steered a rather uneven course between a tortious act for which the sovereign is immune except insofar as it has expressly consented to be liable, and those acts amounting to an imposition of a servitude for which the constitution implies a promise to justly compensate. Generally it is held that a single destructive act without a deliberate intent to assert or acquire a proprietary interest or dominion is tortious and within the rule of immunity." (Citation.)

Appellant cites *Tormey* v. *Anderson-Cottonwood Irr. Dist.,* 53 Cal.App. 559 [200 P. 814], for the proposition that an irrigation district may be held liable for damage to private property resulting from seepage from an irrigation ditch constructed by an irrigation district, and states that this is true whether the damage results with or without negligence on the part of the district. (Citing *Hume* v. *Fresno Irr. Dist.,* 21 Cal.App.2d 348 [69 P.2d 483] and *Ketcham* v. *Modesto Irr. Dist.,* 135·Cal.App. 180 [26 P.2d 876].) The Tormey case and the·Ketcham case were both commented upon in *McNeil* v. *City of Montague, supra,* and the court there said, at page 328:

"In those cases the plaintiffs sought damages because the defendant irrigation districts were operating canals in such a manner that seepage water was escaping and depriving the plaintiffs of the full use of their lands ·adjoining the canals.

The lands used for the canals had admittedly been acquired and were being used for public purposes and the extension of the use through the seepage of water to the lands adjoining was also clearly for a public use and it was so held. It may be noted here also that upon a proper showing the lands covered by seepage water could have been condemned for the use of the districts.''

In the Tormey case the action was brought to restrain the defendant from permitting seepage water from its canal to flow upon plaintiff's lands, to his damage, and it was alleged:

'' 'That said ditch or canal was negligently and carelessly constructed by defendant, and that because of such construction by defendant water has constantly escaped and seeped through the bottom and banks of said canal, and said defendant, ever since the use by it of said canal or ditch for conducting water has negligently, carelessly and without right allowed said water to flow to and upon the said lands of plaintiffs.' ''

In that case the seepage was a natural and necessary consequence in the construction of the canal and the defendant was properly restrained from permitting such seepage. The facts therein are quite different from those in the instant case. The damage to plaintiff's crops herein did not arise in any way from the construction of defendant's drains nor was it necessary that the defendant should cause the chemical to be deposited on plaintiff's land in the maintenance of said drains.

Since it was stipulated by the parties that the irrigation district was acting in its governmental capacity, we are not here concerned with the question of acts of an irrigation district performed in a proprietary capacity.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.