2004-NMCA-132

102 P.3d 111

Tom **DELLAIRA** and Mary Carnes, husband and wife, Plaintiffs–Appellants,

v.

**FARMERS INSURANCE EXCHANGE,** a foreign corporation, Defendant–Appellee,

and

Farmers Insurance Company of Arizona, a foreign corporation, Defendant.

No. 23,383.

Court of Appeals of New Mexico.

Oct. 5, 2004.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, Stephen C. Ryan, Stephen C. Ryan, PC, Scottsdale, AZ, Steven Vogel, Albuquerque, NM, for Appellants.

Daniel J. O'Brien, Richard J. Valle, O'Brien & Houliston, Albuquerque, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} Defendant Farmers Insurance Company of Arizona (FICA) issued an automobile insurance policy to Plaintiffs. Under the facts assumed to be true, Defendant Farmers Insurance Exchange (FIE) directed, handled, administered, and adjusted all claims submitted by FICA's policy holders. Plaintiffs sued FICA, FIE, and others with respect to the handling of their claim. The district court entered a Rule 1–012(B)(6) NMRA dismissal on Plaintiffs' insurance bad faith, breach of contract, New Mexico Insurance Code, and New Mexico Unfair Practices Act claims against FIE. Plaintiffs appealed. We reverse the district court's dismissal of Plaintiffs' bad faith, Insurance Code, and Unfair Practices Act claims against FIE. We affirm the dismissal of Plaintiffs' breach of contract claim against FIE.

## BACKGROUND

{2} Plaintiffs filed a claim for vehicle damage with their insurer, FICA. Dissatisfied with the way the claim was handled, Plaintiffs sued FICA, FIE, Farmers Group, Inc., and branch claims manager, Michael Idehara, for breach of contract, insurance bad faith, breach of fiduciary duties, violation of the Trade Practices and Frauds Act, NMSA 1978, §§ 59A–16–1 to –30 (1984, as amended through 2003), contained in the New Mexico Insurance Code (the Insurance Code), and violation of the Unfair Practices Act, NMSA 1978, §§ 57–12–1 to –24 (1967, as amended through 2003) (the UPA). Early in the proceedings, the claims against Farmers Group, Inc. and Idehara were dismissed by stipulation.

{3} FIE moved for dismissal of Plaintiffs' claims against it pursuant to Rule 1–012(B)(6). Although it admittedly adjusted claims submitted by FICA policyholders, FIE argued that it could not be liable to Plaintiffs because it was not a party to Plaintiffs' insurance contract. Plaintiffs asserted that they needed the opportunity to conduct discovery to determine the details of the relationship between FICA and FIE.

{4} The district court dismissed all of Plaintiffs' original claims against FIE, but it allowed Plaintiffs to file an amended complaint adding claims against FIE and FICA under theories of joint venture, civil conspiracy, and aiding and abetting. In its order dismissing the original claims, the court stated that "[i]n New Mexico, under *Chave[z] v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct. App.1976), there can be no claim for bad faith in the absence of a contract between an insured and an insurer." The court certified its order as final pursuant to Rule 1–054(B) NMRA. In Plaintiffs' amended complaint, allegations were added concerning the relationship between FICA and FIE, claiming that FIE through "agreements, contracts, pattern and practice between FICA and FIE . . . directs, handles, administers and adjusts insurance claims submitted by policyholders of [FICA]" and that FIE was liable for all misconduct alleged in the complaint under theories of "agency, contracts, agreements, common law and statute."

{5} Plaintiffs appealed from the order of dismissal. While this appeal was pending, the remaining claims against FIE asserted in the amended complaint, namely, joint venture, civil conspiracy, and aiding and abetting, along with all claims against FICA, were tried to a jury. Although we have no record of what occurred in the district court after Plaintiffs filed this appeal, the parties tell us that the jury returned verdicts in favor of FICA. Plaintiffs have not appealed from the verdicts.

## DISCUSSION

### Mootness and Collateral Estoppel Issues

{6} FIE argues that because certain remaining claims against FIE and FICA were tried to a jury with no result adverse to FIE and FICA, Plaintiffs' appeal is moot and also that Plaintiffs cannot pursue this appeal because various rulings at trial barred their claims under the doctrine of collateral estoppel. Without a record of what occurred in the district court after dismissal of Plaintiffs' original claims against FIE, we will not attempt to resolve these questions. However, because we reverse the district court's dismissals of certain of Plaintiffs' claims against FIE, as discussed later in this opinion, FIE on remand may renew its defenses of collateral estoppel and mootness, and the district court may then rule on the viability of those defenses. *See State v. Bishop,* 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct.App.1992) ("[I]t is the district court that is in the best position to decide whether the party against whom the doctrine [of collateral estoppel] is used has had a full and fair opportunity to litigate.").

### Standard of Review and Treatment as a Rule 1–012(B)(6) Dismissal

{7} FIE's motion to dismiss relied solely on Rule 1–012(B)(6) and the district court presumably determined that Plaintiffs failed to state a claim upon which relief could be granted without considering facts outside the complaint. There is nothing in the record indicating that the district court relied on exhibits submitted by Plaintiffs in opposition to FIE's motion to dismiss. We therefore review the district court's decision under the

standard applicable to Rule 1–012(B)(6) dismissals: *See Electro–Jet Tool & Mfg. Co. v. City of Albuquerque,* 114 N.M. 676, 678–79, 845 P.2d 770, 772–73 (1992) (reviewing summary judgment pursuant to the standard of review applicable to Rule 1–012(B)(6) dismissals where the movant "essentially sought, and the court's order granted, dismissal … for failure to state a claim upon which relief could be granted"). Whether the district court properly dismissed the claims against FIE is a question of law, which this Court reviews de novo. *Valles v. Silverman,* 2004–NMCA–019, ¶ 6, 135 N.M. 91, 84 P.3d 1056.

■ {8} We accept as true "[a]ll well-pleaded factual allegations" and we resolve all doubts "in favor of the sufficiency of the complaint." *Id.* (internal quotation marks and citation omitted). Disregarding Plaintiffs' exhibits and looking only at Plaintiffs' allegations, we determine "whether the plaintiff[s] might prevail under any state of facts provable under the claim." *N.M. Life Ins. Guar. Ass'n v. Quinn & Co.,* 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991). In this case, we will consider the allegations in both the original and amended complaints regarding the relationship between FIE and FICA. The allegations in the amended complaint had to do with "the conduct, transaction or occurrence set forth" in the original complaint. Rule 1–015(C) NMRA. They therefore relate back to the date of the original complaint. *Id.*

**Claim Against FIE for Bad Faith**

■ {9} Plaintiffs alleged that FIE through agency, contract, or agreement with FICA "directs, handles, administers and adjusts insurance claims submitted by policyholders of [FICA]," and that FIE and FICA were "obligated to promptly, timely, thoroughly investigate, evaluate and pay and/or indemnify Plaintiffs for their rental vehicle and for the actual cash value of Plaintiffs' total loss vehicle." Plaintiffs further contended that FIE and/or FICA "continually refused" to resolve the claim fairly and timely, and thereby breached the duty of good faith and fair dealing.

{10} FIE argues that *Chavez v. Chenoweth,* 89 N.M. 423, 429, 553 P.2d 703, 709 (Ct.App.1976), precludes recognition of a claim for bad faith against anyone other than a party to the insurance contract, which in this case was FICA. We disagree. In *Chavez,* the plaintiff was involved in a car accident with State Farm's insured. The plaintiff sued State Farm, claiming that, through its agent, it had assured the plaintiff that State Farm would compensate her fully for all her damages. *Id.* In affirming the district court's dismissal of the claim, this Court said that "[t]he 'bad faith dealing' rule applies between an insurer and insured." *Id.* Thus, *Chavez* addressed only the relationship between an insurer and the injured party suing the insured. The Court in *Chavez* was not faced with a bad faith claim as is asserted in this case. *See Fernandez v. Farmers Ins. Co. of Ariz.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)). Here the issue is whether the bad faith dealing rule applies between an insured and an entity that handles the insurance function of claim determination, a function inherent in the insurance transaction.

■ {11} An insurance contract is not always treated as an ordinary contract. *See Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 466 (Colo.2003) (en banc) ("[I]nsurance contracts are not ordinary commercial contracts."). The relationship between insurer and insured is a special relationship under New Mexico law. *See Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). An insurer owes a duty of good faith and fair dealing to its insured. *Id.* at 438–39, 872 P.2d at 856–57. This duty is non-delegable. *Jessen v. Nat'l Excess Ins. Co.,* 108 N.M. 625, 629, 776 P.2d 1244, 1248 (1989); *see Cary,* 68 P.3d at 466. It follows that an insurer cannot avoid or dissolve this duty by delegating to third parties its essential function of making sure that claims for policy benefits are handled and determined fairly, promptly, and honestly. *See id.*

{12} In *Cary,* an entity that did not issue the insurance policy "fulfilled virtually all of the functions normally performed by an in-

surance company in processing claims and determining whether to deliver insurance benefits." *Id.* at 468. Furthermore, the entity "had a significant financial incentive to delay payment of benefits or coerce [the insured] into a diminished settlement." *Id.* The court in *Cary* held that the entity owed a duty of good faith and fair dealing to the insured, even where no privity of contract existed between the two, because the entity "had primary control over benefit determinations, assumed some of the insurance risk of loss, undertook many of the obligations and risks of an insurer, and had the power, motive, and opportunity to act unscrupulously in the investigation and servicing of insurance claims." *Id.* at 463. We find the rationale of *Cary* persuasive.

{13} Although the rationales differ some, other cases have reached a similar result under analogous circumstances. *See Wolf v. Prudential Ins. Co. of Am.,* 50 F.3d 793, 797–98 (10th Cir.1995) (applying Oklahoma law in reversing summary judgment in favor of insurance administrator on a bad faith claim where the administrator "undertook many of the obligations and risks of an insurer"), *cited with approval in Campbell v. Am. Int'l Group, Inc.,* 976 P.2d 1102, 1109 (Okla.Civ. App.1999) (reversing dismissal of bad faith claim against insurer's parent company where there was evidence that the parent played a significant role in the handling of insureds' claims); *Gatecliff v. Great Republic Life Ins. Co.,* 170 Ariz. 34, 821 P.2d 725, 730–31 (1991) (in banc) (reversing summary judgment in favor of parent company that managed claims of subsidiary insurer and determined insureds' premium and eligibility for benefits on grounds that, even though the parent company was not a party to the contract, it could be liable for bad faith cancellation of benefits); *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, 1137–38 (1982) (in banc) (holding proper an instruction on joint and several liability as to the entity handling the investigation and payment of claims, and determining joint venturers both owed common duty to act in good faith). Further, a series of cases involving various Farmers entities have indicated that under certain circumstances, a related managerial entity can be liable under the duty of good faith and fair dealing though not itself bound by the insurance contract. *See Tran v. Farmers Group, Inc.,* 104 Cal.App.4th 1202, 128 Cal.Rptr.2d 728, 740–41 (2002); *Delos v. Farmers Ins. Group, Inc.,* 93 Cal. App.3d 642, 155 Cal.Rptr. 843, 849 (1979); *Farmers Group, Inc. v. Trimble,* 768 P.2d 1243, 1247 (Colo.Ct.App.1988), *overruled on other grounds by Goodson v. Am. Standard Ins. Co. of Wis.,* 89 P.3d 409 (Colo.2004) (en banc); *Oliver v. Farmers Ins. Group of Cos.,* 941 P.2d 985, 987 (Okla.1997). We note that FIE was a party in each of the Farmers-related cases.

{14} We hold that Plaintiffs allege sufficient facts to pursue a claim against FIE for breach of the duty of good faith and fair dealing. We do not see any sound reason why New Mexico should not permit pursuit of such a claim where, as is suggested by the pleadings, an entity related to or pursuant to agreement with the insurer issuing the policy has control over and makes the ultimate determination regarding the merits of an insured's claim. The reasons why courts have recognized the special and unique relationship between insurer and insured include the inherent lack of balance in and adhesive nature of the relationship, *Bourgeous,* 117 N.M. at 439, 872 P.2d at 857, as well as the quasi-public nature of insurance and the potential for the insurer to unscrupulously exert its unequal bargaining power "at a time when the insured is particularly vulnerable." *Wolf,* 50 F.3d at 797. An insured is particularly vulnerable at the point following a loss when the insured makes a claim for the loss. *See Cary,* 68 P.3d at 467. An entity that controls the claim determination process may have an incentive similar to that of an unscrupulous insurer to delay payment or coerce an insured into a diminished settlement. *See id.* at 468. The entity acts as an insurer and is therefore bound within the special relationship created through the insurance contract. *See id.* at 469 (stating that "[t]he application of a strict privity of contract requirement ... would allow [entities] to act with impunity in the service of their own self-interest, in disregard of th[e] underlying ... principles upon which the special relationship exception to the privity require-

ment exists"). An insured's expectations of good faith handling and ultimate determination of his or her claim for benefits by the insurer extends no less to an entity that both handles and determines the claim than to the insurer issuing the policy. "Absent the prospect of damages for bad faith breach, [the entity performing claims determination] has no incentive to pay in good faith[.]" *Id.* at 468.

{15} We conclude that Plaintiffs stated a claim for breach of the duty to act in good faith, and that, under some state of facts, relief might possibly be granted. Because the matter before us is one of first impression, we do not fault the district court in following the usual doctrine of lack of contractual privity. We do not, at the Rule 1–012(B)(6) dismissal stage, venture any guess as to whether Plaintiffs can provide evidence sufficient to survive summary judgment. But it is clear to us that Plaintiffs are entitled to go forward with discovery in an attempt to establish relationships and other circumstances that would permit them to proceed on the merits of their claim of breach of the implied covenant of good faith and fair dealing.

**Claim Against FIE for Breach of Contract**

{16} At oral argument, Plaintiffs conceded that they have no colorable claim for breach of the insurance contract except under an alter ego theory. FIE contends that Plaintiffs waived any claim of alter ego because they failed to plead the theory in either the original complaint or the amended complaint. We agree. Even the most generous view of Plaintiffs' allegations compels the conclusion that Plaintiffs did not give FIE notice of a claim of alter ego. *See Garcia v. Coffman,* 1997–NMCA–092, ¶ 11, 124 N.M. 12, 946 P.2d 216 ("Under our rules of notice pleading, it is sufficient that [the] defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim[.]" (internal quotation marks and citation omitted)).

**Claim Against FIE Under the Insurance Code**

{17} Plaintiffs contend that the district court erred in dismissing their claim against FIE for violation of the trade practice and frauds portion of the Insurance Code. *See* §§ 59A–16–1 to –30. We agree. Section 59A–16–20 states:

> the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited:
>
> . . .
>
> E.   not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims[.]

Pursuant to Section 59A–16–1, Section 59A–16–20 applies to adjusters as well as insurers. *See* § 59A–16–1.

{18} Plaintiffs' original complaint alleged that FIE, as an adjuster, contracted with a company that FIE knew had a reputation for offering "values lower than a fair actual cash value or replacement value of an insured's total loss vehicle[,]" and that FIE offered a lower than fair value for Plaintiffs' vehicle. Under the state of facts thus alleged in the complaint, Plaintiffs may be able to show that FIE offered lower than fair settlements with such frequency as to "indicate a general business practice." § 59A–16–20. Thus, they have stated a claim. *See Valles,* 2004–NMCA–019, ¶ 18, 135 N.M. 91, 84 P.3d 1056.

**Claim Against FIE Under Unfair Practices Act**

{19} Plaintiffs also contend that the district court erred in dismissing their claim against FIE for violation of the UPA. *See* §§ 57–12–1 to –24. We agree. In the original complaint, Plaintiffs alleged:

> Defendant [FIE] is a foreign corporation which directs, handles, administers and adjusts all claims submitted by policyholders of [FICA], including [Plaintiffs'] claim. . . . As such, [FIE] is fully liable for any and all errors and misconduct with respect to Plaintiffs['] insurance claim.
>
> . . .
>
> Consistent with the terms and conditions of the insurance policy, . . . FIE . . . was

obligated to ... indemnify Plaintiffs in an amount of money such that Plaintiffs could purchase a like kind and comparable vehicle in their local marketplace.

. . .

[Defendants] offered the sum of $2,100 to resolve Plaintiffs' total loss claim, representing that this amount of money was sufficient to allow the Plaintiffs to purchase a like kind and comparable vehicle in the local marketplace.

. . .

[FIE's] failure and refusal to promptly provide the correct insurance coverage to Plaintiffs pursuant to Plaintiffs' insurance contract ..., was willful ... and failed to provide the insurance coverage contracted for.

Further, Plaintiffs alleged that, at the time of Plaintiffs' claim, FIE had a contract and an ongoing relationship with a loss valuation company that FIE knew offered "lower than a fair actual cash value or replacement value of an insured's total loss vehicle."

■ {20} Section 57–12–2(D) defines an unfair trade practice as:

a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes . . .:

. . .

(17) failure to deliver the quality or quantity of goods or services contracted for[.]

Thus, a plaintiff must prove four elements in order to establish a violation of the UPA: (1) the defendant made a false statement, (2) the defendant made the statement in connection with the "sale ... of ... services" and knew that the statement was false, (3) the defendant made the statement in the regular course of trade or commerce, and (4) the statement was one which "may, tends to, or does[ ] deceive or mislead any person." *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97,

100, 811 P.2d 1308, 1311 (1991) (internal quotation marks and citations omitted).

{21} In this case, the service at issue is the provision of insurance coverage with indemnification after a loss. Assuming the facts as pleaded are true, Plaintiffs could show that the false statement was that $2,100 was "sufficient to allow the Plaintiffs to purchase a ... comparable vehicle." In support of the second element, Plaintiffs alleged that FIE knew the statement was false by alleging that FIE knew the valuation company offered lower than fair values to settle claims. Plaintiffs will have to show that the statement was made in connection with the sale of the insurance. *See id.* The last two elements, that the statement was made in the regular course of FIE's trade and that it may deceive or mislead any person, could possibly be proved under the facts alleged in the complaint. Thus, under the facts pleaded, it is possible that Plaintiffs could show that FIE "fail[ed] to deliver the quality or quantity of goods or services contracted for[.]" § 57–12–2(D)(17).

{22} FIE contends that in order for the elements of Section 57–12–2(D)(17) to be met, FIE would have to have been a party to the insurance contract with Plaintiffs. However, Plaintiffs pleaded that FIE handles claims for FICA, which Plaintiffs could show at trial to be pursuant to a contract. Further, Plaintiffs alleged that FIE had a duty to indemnify Plaintiffs for their loss, suggesting that, at trial, Plaintiffs may be able to show that they were third party beneficiaries of the contract between FICA and FIE because FIE was obligated to fulfill the indemnification commitment in the insurance contract between FICA and Plaintiffs. Thus, it appears that, under any state of facts provable under the claim, Plaintiffs may be able to show that FIE's offer was a "failure to deliver the quality or quantity of goods or services contracted for[.]" § 57–12–2(D)(17). Even though Plaintiffs did not use the language "third party beneficiaries" in their complaint, "litigation is not an art in writing nice pleadings, and [ ] generally cases should not be decided on the pleadings." *Hambaugh v. Peoples*, 75 N.M. 144, 152–53, 401 P.2d 777, 782 (1965) (internal quotation

marks and citation omitted). Further, while Plaintiffs could certainly have been more clear, the facts as pleaded put FIE on notice that Plaintiffs were claiming that FIE's duty to indemnify Plaintiffs for their loss was found in the contract between FIE and FICA. *See Valles,* 2004–NMCA–019, ¶¶ 18, 24, 135 N.M. 91, 84 P.3d 1056.

## CONCLUSION

{23} We reverse the district court's dismissal of Plaintiffs' original claims against FIE for breach of the duty of good faith and fair dealing, and for violations of the Insurance Code and the UPA. We remand with instructions to the district court (1) to reinstate those claims, and (2) to consider whether the reinstated claims are now moot or subject to collateral estoppel, provided that FIE renews its arguments below. We affirm the court's dismissal of the claim for breach of contract.

{24} **IT IS SO ORDERED.**

I CONCUR: JAMES J. WECHSLER, Chief Judge.

CYNTHIA A. FRY, Judge (specially concurring).

FRY, Judge (specially concurring).

{25} I concur in the result of the majority opinion. I also agree with the rationale supporting the result, except that portion of the opinion discussing Plaintiffs' claims against FIE for bad faith. I write separately to explain how I would use a different analysis to reverse the dismissal of Plaintiffs' bad faith claims.

{26} I have two problems with the majority's approach. First, because there is already an established legal theory that would permit Plaintiffs to sue FIE for bad faith, the majority has unnecessarily created a new cause of action. Second, the new cause of action is too amorphous, and the majority provides no practical guidance to practitioners and the district courts as to how the new claim is to be pleaded and proved. I briefly address each issue in turn.

{27} Instead of resorting to cases from other jurisdictions that have fashioned a totally new cause of action, we need search no further than the common law legal theory of delegability of performance. *See generally* E. Allan Farnsworth, *Contracts* §§ 11.10–11.11 (2d ed.1990). The *Restatement (Second) of Contracts* sets out the framework for the cause of action that arises from this theory, where, for example, the insurer has delegated to another entity some of its obligations under the insurance contract. Under those circumstances, the cause of action consists of two elements: (1) the existence of a "delegation agreement" between the insurer and another entity whereby one delegates to the other obligations owed to the insured under the contract of insurance; and (2) evidence that the insured is an intended beneficiary of the delegation agreement. *See Restatement (Second) of Contracts* § 318 (1981) (outlining the requirements for a delegation agreement); § 302 (defining an intended beneficiary); § 304 (explaining that a promise in a delegation agreement can create a duty in the delegate). If both elements are proven, the insured may assert a bad faith claim against either entity that is party to the delegation agreement. *See Jessen,* 108 N.M. at 629, 776 P.2d at 1248 (explaining that the duty of good faith is a non-delegable duty).

{28} This brings me to my second point: the new cause of action created by the majority has only vague perimeters. It seems to require that the target entity have some sort of undefined relationship with an insurer and some indefinite ability to control and determine the resolution of the insured's claim. Majority Opinion, ¶ 14. The entity may or may not have some financial incentive to act contrary to the insured's best interests. *Id.* The majority does not clarify what precisely a plaintiff has to prove about the target entity in order to prevail. The majority has painted a new cause of action with the broadest of brush strokes and left it to litigants and district courts to struggle to define the cause of action while worrying that they might be guessing wrong.

{29} In reversing the dismissal of Plaintiffs' bad faith claims, I would simply rely on the common law theory of delegability of performance and point the litigants and the district court to the Restatement for clear

guidance on the requirements for proving such a claim.