Robert J. RESSEL and Betty L. Ressel, Appellants,

v.

SCOTT COUNTY, Missouri, Respondent.

No. 69025.

Missouri Court of Appeals, Eastern District, Southern Division.

July 2, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 15, 1996.

Application to Transfer Denied Sept. 17, 1996.

Douglas Taft Sloan, Limbaugh, Russell, Payne & Howard, Cape Girardeau, for appellants.

James R. Robison, Sikeston, for respondent.

AHRENS, Judge.

Plaintiffs Robert and Betty Ressel brought suit against defendant Scott County, Missouri after it refused to repair a bridge that was washed out by a flood in 1990. The trial court granted defendant's motion for summary judgment and the plaintiffs appeal. We affirm.

Plaintiffs purchased the property in question in 1977. The property is bordered on the east by Interstate Highway 55, and on the south and west by the Mirgeaux and Raines properties. It is unclear from the record what borders plaintiffs' property on the north. County Road 206 runs from the plaintiffs' property on the east to Old Highway 61 on the west. Plaintiffs allege that County Road 206 was their only reasonable means of access to the general street system from their property.

In December, 1990, a bridge that crosses Ramsey creek on County Road 206 was washed out by a flood.[1] Plaintiffs contend when the bridge in question was washed out, they became landlocked and now have no means of ingress or egress to and from their property. Plaintiffs assert this has caused

---

1. This bridge was located just west of the Plaintiffs' border with the Raines' property. Thus, the bridge did not abut plaintiffs' property.

the value of their property to decline from $150,000 to $35,000 and has forced them to establish a second residence.

Plaintiffs made a request to defendant to repair the bridge but defendant denied that request.[2] Plaintiffs then brought a four count suit against defendant. In count I, plaintiffs sought a mandatory injunction forcing the defendant to repair the bridge. In count II, plaintiffs asserted a claim of inverse condemnation, arguing defendant's failure to repair the bridge constituted a taking of their property. In counts III and IV, plaintiffs sought damages contending the defendant was negligent in not repairing the bridge. Defendant moved for summary judgment on all counts and the trial court granted its motion. The plaintiffs appealed the trial court's ruling as to counts I and II.

■ When reviewing an appeal from summary judgment, we review the record in the light most favorable to the non-moving party. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is a question of law and therefore our review is essentially de novo. *Id.* Summary judgment is only appropriate if the moving party demonstrates there are no material facts in dispute so that it is entitled to judgment as a matter of law. *Id.*

■ In their first point, plaintiffs contend they have obtained a valuable property right in the washed out bridge and defendant's failure to repair the bridge damaged that interest. Thus, they argue, they are entitled to just compensation under Art. I, § 26 of the Missouri Constitution.

■ Art. I, § 26 provides: "private property shall not be taken or damaged for public use without just compensation." Under this constitutional provision, to recover for a claim of inverse condemnation, a plaintiff must show the government appropriated, without formally condemning, some valuable property right which the landowner has acquired by the legal and proper use of his land. *Forty Mill Realty Venture v. Missouri Highway Transp. Dep't.*, 872 S.W.2d

528, 529 (Mo.App.1994). Thus, the plaintiff is not required to show an actual physical taking of its property to recover. *Id.*

■ Missouri courts have recognized that a landowner does obtain a valuable property interest in a publicly owned street if it is the landowner's only means of reasonable access to the general street system. *State Highway Comm'n v. Kemper*, 542 S.W.2d 798, 801 (Mo.App.1976). Thus, under Art. I, § 26, if a government entity appropriates a street that is the landowner's only reasonable means of access to the general street system, the landowner is entitled to just compensation. *Wilson v. Kansas City*, 162 S.W.2d 802, 804 (Mo.1942).

. In the instant case, defendant has not refuted plaintiffs' allegation that the bridge was their only reasonable means of accessing the general street system. However, defendant contends that it is entitled to summary judgment since the government cannot, as a matter of law, appropriate a valuable property interest when that interest is destroyed by natural forces. Thus, defendant asserts, plaintiffs' allegation that its decision not to repair the bridge over Ramsey Creek does not state a claim of inverse condemnation under Art. I, § 26. We agree.

Defendant points to our Supreme Court's decision in *State Highway Comm'n v. Swink* to bolster its contention that government inaction does not give rise to a claim of inverse condemnation. 537 S.W.2d 556 (Mo. banc 1976). In *Swink*, the Court stated, in dictum, that there are at least two factual situations that give rise to a claim for inverse condemnation. *Id.* at 558. The first factual situation is when the government does not formally condemn the land but nevertheless physically occupies it by mistake or design. *Id.* The second factual situation is when the government does not physically occupy the land, but as a direct consequence of an *improvement*, the land is damaged in some manner. *Id.* (emphasis added).

We note that the *Swink* court used the term "at least two" in describing the factual situations that give rise to a claim of inverse

---

**2.** Defendant did replace the bridge in 1954 and 1973 after it washed out.

condemnation. Thus, the *Swink* Court did not foreclose the possibility that other factual situations may give rise to a claim for inverse condemnation. However, we feel that the better reasoned position is to not extend the *Swink* Court's dictum to include this particular situation.

Although a Missouri court has not addressed this issue specifically, courts in other jurisdictions have denied recovery under a claim of inverse condemnation when the asserted damage is the result of natural forces. *Brown v. School Dist. of Greenville County*, 251 S.C. 220, 161 S.E.2d 815, 817 (1968); (Plaintiff's complaint that his property was damaged by the county's refusal to alter the slope of a school's property, which would have alleviated the flooding of his property, did not state a claim for inverse condemnation since it failed to allege that an affirmative government act caused the flooding); *Wildensten v. East Bay Regional Park Dist.*, 231 Cal.App.3d 976, 283 Cal.Rptr. 13, 16 (1991) (Plaintiff's complaint that a park district's refusal to stabilize its undeveloped land which created landslides that damaged his property did not state a claim for inverse condemnation since it did not allege that an affirmative government act caused the landslides); *Electro–Jet Tool & Mfg. Co. v. City of Albuquerque*, 114 N.M. 676, 845 P.2d 770, 773 (1992) (Plaintiff's complaint that city merely operated drainage ditches that flooded its property was insufficient to state a claim for inverse condemnation since it failed to allege that a specific, deliberate government act caused the flooding); *Starks v. Albemarle County*, 716 F.Supp. 934, 938 (W.D.Va.1989); (Plaintiffs' complaint that county's flood culvert failed to alleviate the flooding of its property did not state a claim for inverse condemnation since it did not allege that a specific government act caused the flooding); *See also DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding that 14th Amendment to the Federal Constitution does not require states to act affirmatively to protect the life, liberty or property of its citizens).

 Where, as here, the asserted damage is the result of a force of nature, it is that natural force and not a government act that destroys the plaintiff's property interest. Thus, following the rationale of the cases cited above, we hold that a plaintiff does not state a claim for inverse condemnation under Art. I, § 26 when the asserted damage is the result of some natural force.

In the instant case, plaintiffs allege in their petition that defendant damaged their property by failing to repair the bridge over Ramsey creek after it was washed out by flood. Since the asserted damage, the destruction of the bridge, was directly caused by the flood, plaintiffs have failed to state a claim for inverse condemnation under Art. I, § 26.

This holding is supported by public policy considerations as well. The legislature has given the county commissions absolute discretion in deciding which county bridges to maintain. § 234.010 RSMo 1994. A holding that would allow a plaintiff to assert a claim of inverse condemnation in the case of a governmental decision not to repair a washed out bridge would seriously undermine the public policy considerations underlying § 234.010. Plaintiffs' first point is denied.

 Plaintiffs argue in their second point[3] that the trial court should have issued a writ of mandamus against the county commission. Apparently, plaintiffs base their argument on the assertion that § 234.010 RSMo 1994 only covers the building of new bridges. We disagree.

 The primary rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Weston Point Resort Condominium Owners' Assoc. v. Floro*, 796 S.W.2d 928, 930 (Mo.App.1990). If the language of the statute is clear and unambig-

---

**3.** Plaintiffs' second point reads: "Mandamus should issue in addition to or in the alternative to an award of damages." This point alone is inadequate to preserve the alleged error for appellate review. However, when read in conjunction with plaintiffs' argument section, the point does convey what action of the trial court is sought to be reviewed and wherein and why this action is erroneous. Thus, we will review the point on its merits. *See Martin v. Lorren*, 890 S.W.2d 352, 355 (Mo.App.1994).

uous, legislative intent is ascertained from the plain and ordinary meaning of the words of the statute. *Id.* The statute in question states: "Each county commission shall determine which bridges shall be built and **maintained** at the expense of the county ...." (emphasis added). The plain and ordinary meaning of the clear and unambiguous language of § 234.010 unequivocally indicates the legislature intends the county commissions to have complete discretion in determining which bridges to maintain.

 Mandamus is appropriate only to enforce a clearly established right. *Parker v. Adolf,* 725 S.W.2d 131, 132–33 (Mo.App.1987). In the instant case, the county commission has complete discretion in deciding which bridges to maintain. Thus, plaintiffs do not have a clearly established right to force the county commission to repair the bridge. Therefore, mandamus is not appropriate. Plaintiffs' second point is denied.

The judgment of the trial court is affirmed.

GRIMM, P.J., and DOWD, J., concur.