STATE ex rel. CITY OF BLUE SPRINGS, Missouri, Relator,

v.

The Honorable W. Stephen NIXON, Respondent.

No. SC 88475.

Supreme Court of Missouri, En Banc.

April 29, 2008.

---

Brandon D. Mizner, James H. Ensz, Matthew J. Gist, Kansas City, for Relator.

Jonathan A. Bortnick, Bortnick, McKeon, Sakoulas & Schanker, P.C., David R. Buchanan, Michael P. Arnone, II, Beverly M. Weber, Kansas City, Joseph S. Gall, Independence, for Respondent.

LAURA DENVIR STITH, Chief Justice.

Relator City of Blue Springs ("City") seeks a writ of prohibition requiring Respondent, the Honorable W. Stephen Nixon, to grant its motion for summary judgment on claims brought against the City by Blue Springs residents Shawn and Jen- nifer Stevens. The Stevenses allege that the City is liable to them under a theory of inverse condemnation because the City approved the plat of the development in which their property is located and that plat failed to provide sufficiently for drainage of storm water runoff from the homes located higher on the hill on which the Stevenses' property was located. This Court issued its preliminary writ of prohibition.

▮▮▮ This Court makes its writ absolute. To the extent that the damages of which the Stevenses complain were capable of ascertainment prior to their purchase of the property, they do not have standing to assert an inverse condemnation claim because such claims do not run with the land. In the event that the damages were not capable of ascertainment until after the Stevenses purchased the property and built a walk-out basement, the Stevenses would still be required to show some affirmative conduct by the City that resulted in damage. The City's approval of a plat that meets development code requirements which is alleged to lack adequate drainage for storm water cannot sustain liability on an inverse condemnation claim. To hold otherwise would in effect require a municipality to act as an insurer of the plans of every developer. This Court declines to make such a radical extension of the law of inverse condemnation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The home of Shawn and Jennifer Stevens is located in a residential neighborhood in Blue Springs called "Stonecreek." The portion of the subdivision at issue here has 46 lots, some of which are built on the top of a hill and some, including that of the Stevenses, are on a sloping downhill grade. When it rains, as one would ex-

pect, the water that falls on the homes at the top of the hill runs down the hill. Some of this rainwater is caught in a drainage area put in place by Stonecreek's developers, but some also continues on down the hill, where it runs through the Stevenses' yard. Mr. Stevens could see that the lot which he ultimately purchased was located on a downhill slope and indicated to the sellers that he was concerned about drainage in the area. He alleges he was assured that there was no drainage problem.

The Stevenses bought the property and began constructing their home in 2000. They wanted to build a retaining wall in their back yard that would allow them to have a walk-out basement. Their independent builder told them not to put in such a walk-out basement, as it would change the natural drainage of the area and cause them drainage problems from storm water runoff when it rained. The Stevenses decided to build the walk-out basement anyway. This caused a swale in the remainder of the yard, which created a natural channel in which storm water flowing down the hill would run. As a result, when it rains hard, the Stevenses are unable to use portions of their yard through which the storm water flows, and they lose topsoil.

The Stevenses had purchased their lot from the developers of Stonecreek subdivision, Damar Development, Inc. ("Damar") and Markirk Construction ("Markirk"). Damar and Markirk owned the subdivision and requested preliminary plat approval in 1998 and final plat approval in 1999. As required by the City, they submitted a storm water drainage and storm water sewer system plan for Stonecreek that complied with the American Public Works Association Standard Specifications and Design Criteria.

The City's engineer, upon examining the plat and other submissions, found that the plat met the City's development code requirements, including those aspects relating to drainage. He was aware that water would drain down hill when it rained and that the water that was not caught in the provided drainage area would cross through some yards on the slope of the hill, including that of the Stevenses. The City's engineer did not believe that this would cause excessive water to run through that property.

When asked whether he believed that the City should have taken (and compensated affected property owners for) an easement for the water flow through the property, the City's engineer said that he had not considered the issue and did not know, but after further consideration, knowing what he did, he did not believe that an easement was necessary. The City's engineer said he believed that the Stevenses' storm water situation was caused by their retaining wall and walk-out basement, as that is what changed the natural flow of the water. But, he said, the City does not normally dictate whether home buyers will be restricted to flat grades in their lots or will be permitted to build retaining walls. That is usually decided by the developer. If a plat meets the code, then approval is recommended.

The City approved the plat, as recommended by its staff, in an ordinance passed in October 1999. After Damar and Markirk received plat approval from the City, they began construction throughout Stonecreek and sold individual lots to property owners, including the Stevenses.

In 2004, believing that the presence of the storm water runoff interfered with their use and enjoyment of their land, the Stevenses sued Damar and Markirk (and their alleged agents and associates) seeking damages and injunctive relief. They

alleged that the developers were negligent and that they misrepresented the storm water runoff and drainage issues to the Stevenses. The Stevenses also sued the City, alleging it was liable in negligence for its approval of the plat without requiring additional provision for rainwater runoff, and also asserting a claim that the storm water runoff constitutes an inverse condemnation to the extent of the damage it has caused to their land.

The City sought summary judgment on the claims against it for negligence based on sovereign immunity. It sought summary judgment on the inverse condemnation claim based on the fact that the Stevenses did not own the land when the plat approval occurred and, thus, lacked standing, and because the Stevenses had failed to allege or prove an affirmative act of the City that could provide a basis for a finding of inverse condemnation. Although the Stevenses did not present any contrary expert testimony that the City's development code required it to obtain an easement in situations such as this or that the code required the City to impose restrictions on whether a walk-out basement could be built before approving a plat, the trial court denied the City's motion for summary judgment. The City sought relief in prohibition. This Court issued its preliminary writ of prohibition. It now makes that writ absolute.

## II. STANDARD OF REVIEW

This Court has authority to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4.1. A writ of prohibition is appropriate in the context of summary judgment to prevent "unnecessary, inconvenient and expensive litigation." *State ex rel. Police Retirement System of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994) (prohibition appropriate where the circuit court should have granted relator's motion for summary judgment in a malicious prosecution case). This Court may issue a writ of prohibition to prevent a lower court from acting without or in excess of its jurisdiction. *See State ex rel. Noranda Aluminum, Inc. v. Rains*, 706 S.W.2d 861, 862 (Mo. banc 1986); *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 871 (Mo. banc 2001).

## III. ANALYSIS

### A. The Stevenses' Claim Sounds in Inverse Condemnation, Not Negligence.

The Stevenses claimed below that the City is liable for negligence in approval of a plat that does not sufficiently provide for storm water runoff. In response, the City noted that it had sovereign immunity for negligence in the performance of a governmental or discretionary function where, as here, the claim does not involve any of the exceptions to sovereign immunity set out in section 537.600. It also argued that to the extent that the Stevenses are claiming that the alleged negligence of the City in approving the plat caused them property damage from the water, they are alleging a nuisance, and "when private property is damaged by a nuisance operated by an entity having the power of eminent domain, the proper remedy is an action in inverse condemnation." *Byrom v. Little Blue Valley Sewer Dist.*, 16 S.W.3d 573, 577 (Mo. banc 2000).

Respondent concedes in this Court that summary judgment should have been granted on their negligence claims. Accordingly, this Court does not further address the parties' contentions on the negligence claims.

### B. To Have Standing to Sue for Inverse Condemnation, One Must Own The Property at the Time the Property Damage Occurs.

■ The City argues that it is entitled to summary judgment because the Stevenses lack standing to bring an inverse condemnation claim because they did not own the property at the time that the City approved the plat. The law is well-settled that "any damage suffered as a result of [a] taking ... would have been suffered by the owner at the time the damage became ascertainable[.] ... [T]he damage claim based on inverse condemnation [does] not pass to subsequent grantees of the land." *Crede v. City of Oak Grove*, 979 S.W.2d 529, 534 (Mo.App. W.D.1998); *see also Langenberg v. City of St. Louis*, 355 Mo. 634, 197 S.W.2d 621, 625 (1946) (damages resulting from making unauthorized permanent improvements on land would go to owner at the time the permanent improvements were made and not to the plaintiff, who was a subsequent grantee). This approach is correct, for if the damage has already occurred to the land, then the sellers and buyers had at least constructive notice of the damage and could accommodate its effect on the land's value in negotiating the purchase price. To also allow subsequent grantees to recover damages for inverse condemnation would result in a windfall.

■ If, as appears from the record, the crux of the Stevenses' inverse condemnation claim is that the City gave ill-advised approval to a plat that lacked adequate drainage, then this wrong occurred at the time the plat was approved, when the property was *still owned by the developers*. Indeed, the Stevenses themselves say that when they looked at the property prior to purchase they saw that water would flow down the hill onto it and they were concerned about resulting damage to

the property. They claim that they purchased the property only after receiving assurances from the developer and others that drainage was adequate.[1] To the extent that the damages from approval of the plat with allegedly inadequate drainage were capable of ascertainment prior to the Stevenses' purchase, the cause of action for inverse condemnation vested in the prior owners. *See Crede*, 979 S.W.2d at 534. As subsequent grantees, the Stevenses would not have standing to bring a claim for inverse condemnation.

The Stevenses claim, however, that the problem with excessive runoff was not ascertainable until after they purchased the property and built their walk-out basement. While it is a close question on this record whether the damage from storm water runoff was ascertainable prior to the Stevenses' purchase of the property, this Court needs not resolve the standing issue because the City was entitled to summary judgment on the merits, as discussed below.

*C. Mere Failure to Discover an Alleged Defect in a Proposed Plat Does not Give Rise to a Claim for Inverse Condemnation.*

■ The Missouri Constitution protects landowners' property from being "taken *or damaged* for public use without just compensation." Mo. Const. art. I, sec. 26 (emphasis added). When a public entity takes private property directly through the use of its eminent domain power, the owner is compensated for the loss of or damage to the property. *See, e.g., State ex rel. Askew v. Kopp*, 330 S.W.2d 882 (Mo. banc 1960).

■ There are two situations, however, in which a public entity's conduct may

---

1. This Court expresses no opinion as to what representations were or were not made or relied upon or as to whether a duty or breach thereof exists as to Damar, Markirk or any other persons who are not parties to this writ proceeding. There is no claim that the City made any such representations or assurances.

have the effect of taking or damaging a person's property even where the entity has not intended to exercise its power of eminent domain, and in both situations the landowner is entitled to compensation for property taken or damaged.

"One situation is where the authority, having condemnation power, does not condemn a parcel of property but, nevertheless, through mistake or design, actually appropriates the property to public use." *State ex rel. State Highway Comm. v. Swink*, 537 S.W.2d 556, 558 (Mo. banc 1976). This occurs, for example, when a sovereign accidentally takes more land than it condemned because it mistook the property line. It has inversely condemned the extra property it took. All parties in the instant action agree that this ground for inverse condemnation has no application here, for there is no evidence that the City actually appropriated any property to public use.

"Another situation is where the condemning authority does not actually appropriate the property itself to public use but, as a direct consequence of the improvement, the land which has not been condemned nor taken is damaged." *Id.* Respondent asserts that the Stevenses' claim fits within this situation. Respondent admits that nothing that the City actually did caused the Stevenses damage. The damage was caused by water running down a hill. Respondent alleges, however, that the City had an affirmative duty to notice that the plat submitted by the Stonecreek

owners and developers did not sufficiently provide for storm water runoff and, therefore, should have rejected it even if it met the City's development code requirements or else provided for an easement for the path of the water. This failure, Respondent alleges, led to the Stevenses' damage.

In support, Respondent cites *Heins Implement Co. v. Mo. Highway & Transp. Comm.*, 859 S.W.2d 681 (Mo. banc 1993). *Heins* permitted recovery against the Missouri Highway and Transportation Commission (MHTC) for inverse condemnation resulting from surface water run-off caused when MHTC designed a highway bypass that failed to accommodate normal rainfall drainage needs. *Heins* held that where, as in that case, "as a result of a public works project, private property is damaged by an unreasonable diversion of surface waters," *id.* at 691, a claim in inverse condemnation can be made even without a physical invasion of the plaintiffs' property by the public entity itself.

Here, however, it was not the City, but the private developer whose improvements to the land are alleged to have contributed to the Stevenses' damages. The developers are the parties most comparable to the MHTC in *Heins*, and the Stevenses have sued them on this very basis. The City, by contrast, merely approved a plat that was in compliance with the City's code; it did not itself design the plat or own the land or undertake any improvements that resulted in the water being diverted, as in *Heins*.[2]

2. While Respondent suggests in his brief that there is evidence that runoff from a nearby commercial development also added to the problem, it fails to cite any record evidence for this allegation. In fact, the argument section of its brief contains no record citations at all, and could be rejected under Rule 84.04 for that reason. Looking at the factual statement is only slightly more helpful, as whole paragraphs are supported merely by a general

reference to a page or series of pages of testimony, requiring the Court to determine for itself the portion on which it thinks the brief is relying. However, it appears that Respondent is relying on testimony by the City engineer that there is a commercial development nearby that would have runoff. The engineer also states, however, that the development's provision for dealing with that runoff is sufficient and it did not cause excess

Respondent cites no case permitting recovery for inverse condemnation based solely on a municipality's *failure to act.* *Ressel v. Scott County,* 927 S.W.2d 518, 521 (Mo.App. E.D.1996), suggests that there is no liability in the absence of an affirmative act. In *Ressel,* a bridge was washed out by a flood. Plaintiff alleged that the bridge was his only way to access his property and that the county's failure to replace the bridge therefore deprived him of its reasonable use and so constituted inverse condemnation. *Ressel* rejected this argument, agreeing with the county that government inaction does not give rise to a claim of inverse condemnation. In support, it cited to multiple cases from other jurisdictions that had rejected such failures to act as a basis for inverse condemnation, including a case in which the court had rejected "plaintiff's complaint that his property was damaged by the county's refusal to alter the slope of a school's property, which would have alleviated the flooding of his property." *Brown v. School Dist. of Greenville County,* 251 S.C. 220, 161 S.E.2d 815, 817 (1968). *Ressel* also cited cases in which the court rejected claims based on a public entity's failure to control flooding from drainage ditches. *See Electro–Jet Tool & Mfg. Co. v. City of Albuquerque,* 114 N.M. 676, 845 P.2d 770, 773 (1992); *Starks v. Albemarle County,* 716 F.Supp. 934, 938 (W.D.Va. 1989). The rationale of all of these cases was that the municipality had not undertaken any affirmative conduct to cause the injury, but had merely failed to alleviate an injury.

Indeed, the other cases the Stevenses cite also involve affirmative government conduct that results in a taking or damage to property. In *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 423, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), a New York statute affirmatively required a landlord to permit "the installation of cable television facilities upon his property or premises." In effect, the United States Supreme Court noted, the state thereby gave the cable companies an easement for their wires for which compensation was required under the Fifth Amendment. Here, by contrast, the City did not require storm water to obey the laws of gravity and flow down hill across the Stevenses' lot, nor did it preclude the developers from taking additional steps to control the drainage. *Loretto* is not on point. Similarly, in *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), the federal government's affirmative conduct in flying planes so low over plaintiffs' land that the planes deprived plaintiffs of the use and enjoyment of their land and damaged their chicken business entitled plaintiffs to compensation. Notably, neither of these cases involved a government failure to act.

The Stevenses have not identified any legal authority for the duty they allege that the City breached. While the Stevenses may be correct that "as a matter of good government" cities *should not* approve plats unless developers prevent rainwater from running on other property, they simply fail to cite any authority for finding inverse condemnation occurred where the municipality does approve them. A failure to meet aspirational goals does not result in liability. There are few designs that cannot be improved; to accept the Stevenses' argument would in effect force the City to take on the role of unpaid expert for those developing property within its boundaries or risk being held liable as an insurer in inverse condemnation for unseen problems. The Court declines to

drainage on the lots in question. The Ste-    venses presented no contrary evidence.

adopt such an extreme extension of the law governing inverse condemnation.

IV. CONCLUSION

For the reasons set forth above, the preliminary writ is made absolute.

All concur.