Bret MILLER and Natalie Miller,
Plaintiffs/Appellants,

v.

CITY OF WENTZVILLE, Missouri,
Defendant/Respondent.

No. ED 97251.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 17, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 29, 2012.

Application for Transfer Denied
Aug. 14, 2012.

Michael J. Rolwes, Cockriel & Christifferson, LLC, St. Louis, MO, for appellants.

W. Dudley McCarter, Behr, McCarter & Potter, P.C., for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiffs, Bret Miller and Natalie Miller, appeal from the entry of summary judgment in favor of defendant, the City of Wentzville, Missouri, on their inverse condemnation claim to recover damages for cracks in their garage and house foundation, which they alleged had been caused by "street creep," the movement and expansion of the concrete street in the absence of adequate expansion joints. We reverse and remand.

In their inverse condemnation count, plaintiffs alleged that they owned the property at 2212 Blue Lake Drive, which was improved with a home, an attached garage, and a driveway that abutted Blue Lake Drive; that Blue Lake Drive was a concrete street accepted by and maintained by the city; that "[o]ver time, due to the nature of concrete streets and the absence of adequate expansion joints in

the street, Blue Lake Drive has experienced 'street creep'—the street has moved and expanded;" and that "[a]s a result of the 'street creep,' Blue Lake Drive has pushed against the [plaintiffs'] driveway and caused resulting damage to the [plaintiffs'] garage and foundation." Plaintiffs further alleged that the city had twice attempted to repair their driveway by placing expansion joints in the driveway, but the repairs failed to correct the prior damage or halt the "street creep." They alleged that the damage would not have occurred if the city had adequately maintained Blue Lake Drive.

The city filed an answer in which it alleged as affirmative defenses (1) the failure to state a cause of action in that plaintiffs failed to allege that the city performed an affirmative act causing the injury; (2) that plaintiffs' injury was caused by the "imposition" of their concrete driveway and/or their failure to have adequate expansion joints in the driveway; and (3) plaintiffs' failure to mitigate damages by installing appropriate and adequate expansion joints.

Defendant filed a motion for summary judgment. As grounds for its motion, it contended that it was entitled to judgment as a matter of law because plaintiffs could not show causation; improper maintenance is insufficient to support an inverse condemnation claim; and no duty arose.

The following facts were uncontroverted for purposes of the summary judgment motion. Plaintiffs have owned real property at 2212 Blue Lake Drive, Wentzville, Missouri, including an attached garage and concrete driveway, since approximately November 9, 1998. The concrete driveway is located entirely within plaintiffs' property and abuts Blue Lake Drive. Blue Lake Drive was paved before plaintiffs built their home and driveway. Defendant possesses a public right-of-way for the street

of Blue Lake Drive. The street right-of-way extends more than 11 feet from the curb line of Blue Lake Drive towards plaintiffs' property. Blue Lake Drive does not extend beyond the limits of the 50–foot street right-of-way line, and it has remained within that right-of-way at all times.

In 1999, plaintiffs began experiencing leaks in their basement as a result of cracks in the foundation of their residence. In 2002, plaintiffs notified defendant about the "street creep" and damage to their home. Defendant installed an expansion joint at the bottom of plaintiffs' driveway where it met the curb line by removing six inches of concrete from the driveway and replacing it with asphalt. In 2004, after plaintiffs again complained, defendant replaced the asphalt expansion joint by cutting out additional concrete from the driveway. Plaintiffs again contacted defendant a third time to solve the problem.

The trial court entered summary judgment on the inverse condemnation count in favor of defendant "for the reasons stated in Defendant's Motion for Summary Judgment." Plaintiffs appeal from this judgment.

## DISCUSSION

We review the entry of summary judgment *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Finance*, 854 S.W.2d at 377. We view the record in the light most favorable to the party against whom summary judgment is entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id.* at 376. We take as true every fact set forth by affidavit or other-

wise in support of the moving party's summary judgment motion unless the non-movant has denied it in its response. *Id.* The non-moving party's response must show the existence of some genuine dispute about one of the material facts necessary to the plaintiffs right to recover. *Id.* at 381. A genuine issue of material fact exists when "the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. The question is whether essential facts are disputed, not whether those facts are more likely to be true. *Id.* Even if the facts alleged by the movant in a summary judgment motion are uncontradicted, they must establish a right to judgment as a matter of law. *Kinnaman–Carson v. Westport Ins. Corp.,* 283 S.W.3d 761, 765 (Mo. banc 2009). The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *ITT Commercial Finance,* 854 S.W.2d at 380.

*Summary Judgment Procedure*

██ ██ When the movant is a defendant, a right to summary judgment can be established by showing that: (1) facts exist that negate any one of the plaintiff's elements; (2) the plaintiff has not produced and will not be able to produce sufficient evidence for the trier of fact to find the existence of any one of the plaintiff's elements; or (3) there is no genuine dispute about each of the facts necessary to support any one of the defendant's properly pleaded affirmative defenses. *Id.* at 381. Once the movant has made a prima facie showing by one of those means, "the non-movant's *only* recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.* (emphasis in original). *See* Rule 74.04(c).

*Inverse Condemnation Elements*

 Inverse condemnation is the exclusive remedy when private property is taken or damaged without compensation as a result of a nuisance operated by an entity that has the power of eminent domain. *Heins Implement v. Hwy. & Transp. Com'n,* 859 S.W.2d 681, 693 (Mo. banc 1993); *Rader Family Ltd. v. City of Columbia,* 307 S.W.3d 243, 247, 252 (Mo. App.2010); *Christ v. Metropolitan St. Louis Sewer Dist.,* 287 S.W.3d 709, 711 (Mo.App.2009); *Basham v. City of Cuba,* 257 S.W.3d 650, 653 (Mo.App.2008). " 'Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his [or her] property.' " *Basham,* 257 S.W.3d at 653 (quoting *Byrom v. Little Blue Valley Sewer Dist.,* 16 S.W.3d 573, 576 (Mo. banc 2000)). The elements of an inverse condemnation action based on nuisance are (1) notice, (2) an unreasonable operation in spite of that notice, (3) injury, (4) damage, and (5) causation. *Rader,* 307 S.W.3d at 247; *Christ,* 287 S.W.3d at 711; *Basham,* 257 S.W.3d at 653.

*Analysis*

In their two points on appeal, plaintiffs contend that the trial court erred in entering summary judgment in defendant's favor on any of the grounds asserted in defendant's motion. We take these two points together, and consider each of the grounds that were raised in defendant's motion for summary judgment.

I. *Causation*

Defendant's first ground for summary judgment was lack of causation. Defendant claimed that plaintiffs could not show causation because (1) the fact that the driveway was built after the street was

constructed constituted a voluntary act by plaintiffs that precluded recovery as a matter of law; (2) the driveway was maintained solely by plaintiffs; (3) the street remained within its right of way and did not invade plaintiffs' residence; and (4) plaintiffs' failure to install expansion joints in their driveway and maintain their driveway caused their damages.

 The one claiming damages can prove the causation element of a nuisance claim by showing that the offending property was used in a manner that caused injury to the claimant's property. *Basham*, 257 S.W.3d at 653. Further, the "but for" causation test applies. *Zumalt v. Boone County*, 921 S.W.2d 12, 15 (Mo.App. 1996). Under this test, plaintiffs would have the burden to prove that the damage to the foundation of their home would not have occurred but for the "street creep." *Id.* at 16.

In *Zumalt*, we affirmed a trial court's determination, after a trial on the merits, that the trial evidence was insufficient to support "but for" causation in an inverse condemnation case based on "street creep." Defendant argues that the following facts bring this case under *Zumalt* and show no "but for" causation: The driveway was built after the street; the driveway was maintained solely by plaintiffs and their predecessors; and the damage would not have occurred if plaintiffs had installed additional expansion joints or properly maintained their driveway. We disagree. *Zumalt* does not require a finding of no causation on the undisputed facts developed in the summary judgment record in this case.

In *Zumalt*, we observed that the trial evidence was "susceptible to two interpretations as to causation, one of which, as found by the trial court, is that the damage claimed would not have occurred 'but for' the manner in which the driveway was constructed by appellants or their predecessors in title." 921 S.W.2d at 16. We continued:

The evidence was sufficient for the trial court to logically and reasonably conclude that the damage claimed would never have occurred if the driveway had been: (1) located so that a "bridge" would not have occurred between the street; or, (2) expansion joints had been installed by appellants in the driveway to absorb the movement, as they have now done.

*Id.*

 We first address whether the uncontroverted fact that the driveway was built after the street shows "but for" causation. *Zumalt* does not support a conclusion that this fact demonstrates "but for" causation. In *Zumalt*, we pointed out that the record in that case did not indicate when the street or driveway was built, and we did not base our determination that there was sufficient evidence of causation on whether the street or driveway was built first. 921 S.W.2d at 16.

We next consider defendant's contention that because the driveway was maintained solely by plaintiffs and their predecessors, there was no "but for" causation. In *Zumalt*, the parties had stipulated that "the driveway was constructed and maintained solely by appellants and their predecessors in title with no control, interference, or input by respondent." 921 S.W.2d at 16. The fact set out in this stipulation is not relevant to "but for" causation in the case before us. In the first place, the stipulation in *Zumalt* was not the critical evidence showing the absence of "but for" causation. Rather, it was the evidence of "the manner in which the driveway was constructed by appellants or their predecessors in title" that precluded "but for" causation. 921 S.W.2d at 16. Moreover, in the case before us, there was no such stipulation, and this fact was not admitted.

Defendant set out as undisputed facts that plaintiffs had total dominion and control of the driveway and that defendant exercised no control over any part of plaintiffs' driveway. However, plaintiffs denied these facts with reference to the facts that a portion of the driveway was subject to the street right-of-way and utility easement and that defendant had twice repaired the driveway.

Finally, defendant's claim that the damage would not have occurred if plaintiffs had installed additional expansion joints in the driveway is not supported by any uncontroverted facts in the summary judgment record. Our holding in *Zumalt* that there was sufficient evidence to support the finding that the damage would not have occurred if the driveway had not been located to act as a bridge or if expansion joints had been installed in the driveway was based on evidence admitted at trial about these matters. 921 S.W.2d at 16. In contrast, in this case, the summary judgment record does not contain any undisputed facts relating to how plaintiffs' driveway was constructed, whether it physically constituted a "bridge," or whether original or additional expansion joints in the driveway would have prevented or stopped the problem.

Defendant's summary judgment motion also claimed direct causation could not be shown because "Blue Lake Drive remained within the right of way." In its statement of uncontroverted facts, defendant set out as a fact that the street remained in the right-of-way and that it had not invaded plaintiffs' property. Plaintiffs admitted that the street remained in the right-of-way, but denied the statement that the street had not invaded their property. In *Zumalt*, the trial court had found that one street had pushed another street " 'in a direction generally toward the Zumalts'

residence,' yet the street had always remained within its right of way and did not invade appellants' property." 921 S.W.2d at 14. The trial court's finding was not challenged on appeal, and was not part of our causation analysis in *Zumalt*. In any event, in this case, plaintiffs denied that Blue Lake Drive had not invaded their property. Thus, that fact is controverted. Further, our analysis of causation in *Zumalt* was based on the manner in which the driveway was constructed, and not on whether the street remained in its right-of-way. 921 S.W.2d at 16. In this case, the right-of-way included at least 11 feet of plaintiffs' driveway. Whether the concrete street remained within the right-of-way does not show that the concrete of the street did not physically push against plaintiffs' driveway. The fact that the concrete street remained within the right-of-way, standing alone, does not show that plaintiffs could not prove causation.

None of the facts cited by defendant in support of summary judgment based on lack of causation entitle it to summary judgment. Some of these facts were controverted. Further, the facts that were uncontroverted do not entitle defendant to summary judgment as a matter of law because they do not negate the essential element of causation or show that plaintiffs will not be able to produce sufficient evidence for the trier of fact to find the existence of causation.

II. *Improper Maintenance*

The second ground of defendant's motion was that improper maintenance could not support inverse condemnation as a matter of law.[1] In support of this claim, defendant relied on a statement in *Zumalt*, in which we said:

> Appellants cite no specific authority that supports their position that failed

1. Defendant also asserted as part of this ground that proper maintenance does not in-

clude a duty to install expansion joints in the

maintenance of a public street under the circumstances of this case predicated on nuisance or a *Mattingly* [ *v. St. Louis County*, 569 S.W.2d 251 (Mo.App.1978) ] situation is sufficient to support a claim of inverse condemnation. They also cite no specific authority as to why proper maintenance of public streets would include a duty to install expansion joints between them and private driveways to prevent "street creep" from causing damage as alleged here.

921 S.W.2d at 15. However, we did not decide *Zumalt* on this basis. The opinion goes on to state: "Regardless, determination of those issues is not necessary to our review ...." *Id.* We then proceeded to dispose of the appeal on the issue of causation; we did not dispose of the appeal on the *Zumalt* appellants' argument that improper maintenance of a public street is insufficient to support a claim of inverse condemnation. Defendant's motion did not demonstrate that it was entitled to summary judgment as a matter of law on this ground.

III. *Duty*

Defendant's final ground for summary judgment was that "no facts exist as to the duty element" of plaintiffs' inverse condemnation claim. Defendant asserted that plaintiffs could not show duty because (1) defendant had no duty to ensure that plaintiffs' driveway was properly installed; (2) defendant did not take an affirmative act to cause the injury; and (3) the damage was caused by a natural force. It also asserted, under its improper maintenance ground for summary judgment, that it had no duty to install expansion joints in the street.

Defendant did not provide any legal authority to this court or the trial court indicating that duty is an essential element of inverse condemnation. Our courts have not identified duty as a separate essential element of a cause of action for inverse condemnation based on nuisance. *See Rader*, 307 S.W.3d at 247.[2] Rather, the concept of "duty" underpins the element of notice, that is, notice of an unreasonable use gives rise to a duty to correct it. *See Christ*, 287 S.W.3d at 712, 713. Defendant's arguments supporting lack of "duty" do not address duty in this context and do not otherwise show a right to summary judgment as a matter of law on this ground.

Defendant first asserted that it had no duty to ensure that the plaintiffs' driveway was properly installed. This claim is irrelevant. The absence of any such duty would not defeat an inverse condemnation claim. This is not an issue in the case and is not a viable ground for summary judgment.

Defendant next asserted that it committed no affirmative act. Defendant stated in its motion for summary judgment: "Once the City has notice of a problem, regardless of the nature of the invasion or impairment of the plaintiff's property, the plaintiff must be able to prove that ***affirmative actions*** of the governmental defendant in fact caused the injury." (Emphasis in original). As it did in the trial court, defendant relies on *State ex rel. City of Blue Springs v. Nixon*, 250 S.W.3d 365, 371–72 (Mo. banc 2008); *Basham*, 257 S.W.3d at 653; and *Christ*, 287 S.W.3d at 713. Defendant misstates the law set out in these cases. None of them hold that a

---

street. We address this claim in section III of this opinion.

**2.** It is also not an essential element of inverse condemnation generally. *See Heins*, 859

S.W.2d at 693 n. 18; *Harris v. Missouri Dept. of Conservation*, 755 S.W.2d 726, 729 (Mo. App.1988); 29A C.J.S. *Eminent Domain* § 560 (2007).

plaintiff must show notice followed by an affirmative act. *Basham* held that "[t]he existence and operation of a public sewer system does not *per se* constitute a nuisance." 257 S.W.3d at 653. It went on to hold that, if it becomes apparent that the sewers and drains are inadequate, and after notice of these issues, the city fails to remedy the condition and continues to operate the system in the same manner as before as to constitute a nuisance, the city will be liable. *Id.* at 653–54 (citing *Fletcher v. City of Independence,* 708 S.W.2d 158, 177 (Mo.App.1986)). The *Basham* court found that the city had no notice of any deficient condition in its sewer system, and the plaintiffs failed to prove that their loss was caused by "shortcomings in the operation or design of the city's system; neither did plaintiffs show that the city had knowledge of any problem with the operation or maintenance of the sewer system that it could or should have corrected." 257 S.W.3d at 654. In *Christ,* we set out these sections of *Basham* and held that the defendant sewer district in *Christ* could not be liable for inverse condemnation in the absence of evidence that it "was provided with notice of the inadequacy of the sewer and subsequently failed to remedy the condition." 287 S.W.3d at 712. Since it had no notice of a sewer problem, it was not required to prospectively inspect the sewers for such a problem. *Id.* at 713. In *Blue Springs,* the court addressed a situation that also did not involve notice. It rejected a claim that a municipality's failure to independently discover a defect in a plat that did not sufficiently provide for storm water run off gave rise to a claim of inverse condemnation. 250 S.W.3d at 370–72. In sum, these cases hold that a plaintiff cannot hold a city liable when the city has no notice of a problem without evidence of an affirmative act. They do not require proof of an affirmative act when the city has received notice. Rather, it is the failure to correct

or discontinue an unreasonable use after notice that gives rise to a nuisance. *Rader,* 307 S.W.3d at 247; *Christ,* 287 S.W.3d at 712, 713; *Fletcher,* 708 S.W.2d at 166.

■ In this case, the uncontroverted facts showed that notice of the problem caused by "street creep" was given on three occasions. The issue then was whether the use was unreasonable, and if so, whether defendant failed to correct or discontinue the unreasonable use.

Defendant next asserted that the damage was caused by a natural force. It argued that "street creep" was a natural phenomenon that the city did not create, citing *Ressel v. Scott County,* 927 S.W.2d 518, 520 (Mo.App.1996). *Ressel* stands for the proposition that "the government cannot, as a matter of law, appropriate a valuable property interest when that interest is destroyed by natural forces." *Id.* In *Ressel,* we held that the landowners had no cause of action in inverse condemnation against a county that refused to repair a bridge that had been washed out by a flood, causing the landowners' property to be landlocked. *Id.* We held that because the asserted damage, the destruction of the bridge, had been directly caused by a natural force, a flood, and not by a governmental act, the plaintiffs failed to state a claim of inverse condemnation. *Id.* at 521.

In this case, plaintiffs alleged that "due to the nature of concrete streets and the absence of adequate expansion joints in the street," Blue Lake Drive experienced "street creep." This allegation, standing alone, does not show that "street creep" was caused by a force of nature and not by any governmental act in designing and constructing a concrete street. The summary judgment record provides no basis for concluding that the damage was caused by a force of nature as contemplated by *Ressel.*

We last consider defendant's claim that it had no duty to install expansion joints in

the street. Whether it had a duty depends on whether it was reasonable to construct the street with the specific materials and according to the specific design without expansion joints, and whether after receiving notice of damage caused by "street creep," it was unreasonable not to put expansion joints in the street. Defendant did not develop any factual record in the motion for summary judgment on these issues. Defendant was not entitled to summary judgment on this ground.

*Conclusion*

Genuine issues of material fact remain, and defendant has not shown a right to summary judgment as a matter of law. The summary judgment of the trial court is reversed, and the case is remanded.

LAWRENCE E. MOONEY, J. and KENNETH M. ROMINES, J., concur.