ATTORNEY FOR APPELLANT: Lawrence P. Kaplan, 101 S. Hanley Road, Suite 1310, Clayton, MO 63105, KAPLAN ASSOCIATES, LLC.
ATTORNEY FOR RESPONDENT: Patrick Aaron Bousquet, 120 S. Central Ave., Suite 700, Clayton, MO 63105, SMITHAMUNDSEN, LLC.
Honorable Mary K. Hoff
Jess Jobe ("Jobe") appeals from the trial court's grant of summary judgment in favor *308 of AAA Trailer Services, Inc. ("AAA") on its claim that Jobe, an at-will employee, breached an enforceable non-competition agreement ("Non-Compete") and that AAA did not tortiously interfere with Jobe's new employment. We reverse and remand.
Factual and Procedural Background
AAA is a full-service commercial tractor and trailer mechanical service provider that also performs mobile mechanic services. On August 7, 2015, Jobe was employed by AAA as a mobile tractor and trailer mechanic. On November 11, 2015, Jobe signed a "Confidentiality and Non-Competition, Non-Solicitation Agreement For At Will Employees" ("Agreement"[1] ). In exchange for agreeing to the Non-Compete, AAA promised to pay Jobe an additional one-dollar per hour as well as continued at-will employment. On June 28, 2016, Jobe terminated his employment with AAA. Shortly thereafter, Jobe commenced employment with a new employer. On July 5, 2016, Jobe received a letter from AAA's attorney ("Letter") informing Jobe that he was in violation of the Non-Compete. Allegedly, as a result of AAA's actions and its Letter, Jobe was terminated from his new employment.
On August 23, 2016, Jobe filed a two-count petition against AAA seeking a declaration that the Non-Compete part of the Agreement was unenforceable (Count I) and damages for tortious interference with a business expectancy based on AAA's actions and its Letter (Count II). The parties filed cross-motions for summary judgment. The trial court granted AAA's motion for summary judgment, and denied Jobe's motion. The trial court found that the Non-Compete was valid and enforceable and that the Agreement was supported by consideration.[2] In addition, the trial court found Jobe failed to show that AAA interfered with his relationship with his new employer such AAA's actions and its Letter constituted tortious interference with a contract. Jobe now appeals.[3]
Standard of Review
The propriety of summary judgment is solely an issue of law. City of DeSoto v. Nixon, 476 S.W.3d 282, 286 (Mo. banc 2016). Appellate courts review a grant of summary judgment de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. Id.
"The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially." Frye v. Levy, 440 S.W.3d 405, 407 (Mo. banc 2014). "A 'defending party' may establish a right to summary judgment by showing (1) facts that negate any of the claimant's necessary elements; (2) that the claimant, after an adequate period of discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to *309 find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of the facts required to support the movant's properly pleaded affirmative defense." Nail v. Husch Blackwell Sanders, LLP, 436 S.W.3d 556, 561 (Mo. banc 2014).
"The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." Shiddell v. Bar Plan Mut., 385 S.W.3d 478, 483 (Mo. App. W.D. 2012). "However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." Id. Even if the facts alleged by the movant in a summary judgment motion are uncontradicted, they must still establish a right to judgment as a matter of law. Miller v. City of Wentzville, 371 S.W.3d 54, 57 (Mo. App. E.D. 2012) (citing Kinnaman-Carson v. Westport Ins. Corp., 283 S.W.3d 761, 765 (Mo. banc 2009) ). " 'The movant bears the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment.' " Kinnaman-Carson, 283 S.W.3d at 765 (quoting Lewis v. Biegel, 204 S.W.3d 354, 356 (Mo. App. W.D. 2006) ). "The trial court is prohibited from granting summary judgment, even if no responsive pleading is filed in opposition to a summary judgment motion, unless the facts and the law support the grant of summary judgment." Id.
Discussion
Jobe raises two points on appeal. In Point I, Jobe argues the trial court erred in denying his motion for summary judgment because the Non-Compete was invalid and unenforceable, because the undisputed facts showed that AAA had no legitimate business interest in the non-compete and provided inadequate consideration. In Point II, Jobe argues the trial court erred in granting summary judgment in favor of AAA on Jobe's claim for tortious interference because the undisputed facts showed that, through AAA's actions and its Letter sent to Jobe threatening legal action, AAA interfered with Jobe's new employment.
As an initial matter, we note that Jobe failed to comply with the requirements of Rule 74.04 in his responsive pleadings. Rule 74.04(c) provides in pertinent part:
(2).... The response shall set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements.
A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial.
Attached to the response shall be a copy of all discovery, exhibits or affidavits on which the response relies.
A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.
The response may also set forth additional material facts that remain in dispute, which shall be presented in consecutively numbered paragraphs and supported in the manner prescribed by Rule 74.04(c)(1). (Emphasis added).
Jobe filed his petition on August 23, 2016 and AAA filed its answer to Jobe's petition *310 on September 26, 2016. On November 16, 2016, Jobe filed his motion for summary judgment and memorandum in support. On February 21, 2017, AAA filed its cross-motion for summary judgment as well as its response to Jobe's summary judgment motion. On April 27, 2017, Jobe filed his memorandum in support of summary judgment following oral argument; however, he never filed a response to AAA's cross-motion for summary judgment. On May 19, 2017, AAA filed a supplemental memorandum in support of its cross-motion for summary judgment. On May 23, 2017, Jobe filed his reply to AAA's supplemental memorandum. The hearing on the parties' cross-motions for summary judgment was called and heard on May 25, 2017. On June 8, 2017, AAA filed its supplemental sur-reply and suggestions in support. On August 3, 2017, the trial court entered its judgment granting AAA's motion for summary judgment and denying Jobe's motion. While it is clear that in failing to respond to AAA's cross-motion for summary judgment Jobe did not comply with the requirements of Rule 74.04 and therefore, AAA's uncontradicted facts are admitted as true, in order to prevail in its summary judgment motion, AAA must still establish a right to judgment as a matter of law. Miller, 371 S.W.3d at 57.
Here, the relevant paragraphs of the Agreement provide as follows:
EMPLOYMENT AT-WILL. AAA hereby employs , and Employee accepts employment, on an at-will basis, meaning that either Employee or AAA may terminate the employment relationship at any time, for any lawful reason, with or without advance notice. As an at-will employee, Employee is not guaranteed, in any manner, that he or she will be employed for any set period of time. Nothing in this Agreement, or any subsequent modification of this Agreement, constitutes a contract for a term of employment or any guarantee of continued employment with AAA. (Emphasis added).
* * * *
CONSIDERATION FOR POST-EMPLOYMENT RESTRICTIONS. Employee acknowledges that in consideration for the post-employment restrictions in this Agreement, Employer is paying Employee additional consideration in the form of a one-time bonus or an increase in salary, which Employer would not pay Employee under any circumstances except for the agreement of the Employee to these employment restrictions. The additional consideration is as follows: 1.00 per hour. Employee agrees that no further consideration is required to be provided in exchange for Employee's full compliance with all post-employment restrictions contained herein. (Emphasis added).
The non-compete provision and employment restrictions at issue provide as follows:
i. Employee agrees that during the term of term of this Agreement, and for a period of twenty-four (24) months beginning on the termination date of Employee's employment with the Company, under any circumstances, Employee shall not engage in any employment similar to his or her role at AAA, or have a direct or indirect relationship with, or provide consulting services to, any business providing competing services within the Restricted Area, defined below. These restrictions shall also apply to Employee with regard to any subsidiary or affiliate of Company for which Employee has worked.
ii. During the term of this Agreement and for a period of twenty-four (24) months beginning on the termination date of Employee's employment with the *311 Company, under any circumstances, Employee shall not in any geographic area in which duties were assigned to the Employee during the twenty-four (24) months prior to termination of the Employee's employment (or less if Employee employed for a shorter period of time), as proprietor, partner, joint venture, stockholder or shareholder, director, officer, trustee, principal, agent, servant, employee, consultant, or in any other capacity whatsoever, directly or indirectly, render services on behalf of a competitor of the Company or any other third party in any capacity that is similar to Employee's role at AAA, and in which capacity Trade Secrets and/or Confidential Information would reasonably be considered to be useful to the competitor or to such other third party to become a competitor of the Company. This paragraph will not apply to ownership interests, as a passive investor, of five per cent (5%) or less of the outstanding shares of stock of any corporation if such shares are publicly traded in the over-the-counter-market or listed on a national securities exchange.
iii. Employee acknowledges and agrees that AAA currently operates in Missouri and Illinois. As such, Employee agrees that a reasonable "Restricted Area" for purposes of this paragraph shall be the St. Louis-St. Charles-Farmington, MO-IL combined statistical area (CSA) consisting of the City of St. Louis, the Southern Illinois counties of Bond, Calhoun, Clinton, Jersey, Macoupin, Madison, Monroe, and St. Clair (known collectively as the Metro East ); the Missouri counties of Franklin, Jefferson, Lincoln, St. Charles, St. Louis County (separate from and not inclusive of the City of St. Louis), Warren, Washington, and a portion of Crawford County, and the Farmington, MO micropolitan statistical area, which includes Washington and St. Francois Counties. (Emphasis in original).
"The law of non-compete agreements in Missouri seeks to balance the competing concerns between an employer and employee in the workforce." JumboSack Corp. v. Buyck, 407 S.W.3d 51, 54 (Mo. App. E.D. 2013) (quoting Whelan Sec. Co. v. Kennebrew, 379 S.W.3d 835, 841 (Mo. banc 2012) ). AAA, as an employer, had a legitimate interest in "engaging a highly trained workforce without the risk of losing customers and business secrets after an employee leaves his or her employment," while employees have a legitimate interest in "having mobility between employers to provide for their families and advance their careers." Id. Additionally, "although the law favors the ability of parties to contract freely, contracts in restraint of trade are unlawful." Id.
"Missouri courts balance these concerns by enforcing non-compete agreements in certain limited circumstances." Healthcare Servs. of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 610 (Mo. banc 2006). A court will enforce a non-compete only if it is reasonable, meaning "it is no more restrictive than is necessary to protect the legitimate interest of the employer." Id. As such, a non-compete must be narrowly tailored geographically and temporally. Id. Additionally, restrictive covenants are not enforceable to protect an employer from mere competition by a former employee, but only to the extent that they protect the employer's trade secrets or customer contacts. Id. ; see also Victoria's Secret v. May Dept. Stores, 157 S.W.3d 256, 262 (Mo. App. E.D. 2004) (covenants not to compete "are enforceable only to protect against unfair competitive use of either customer contacts or trade secrets"). AAA had the burden to prove *312 the reasonableness of the non-compete agreement. Whelan, 379 S.W.3d at 842.
Here, contrary to AAA's contentions, the summary judgment record failed to show that there was sufficient contact between Jobe and AAA's customers to create a legitimate business interest in the Non-Compete, as a matter of law. We find the instant case similar to Brown v. Rollet Bros. Trucking Co., 291 S.W.3d 766 (Mo. App. E.D. 2009). In Brown, the court held that, "[c]ustomer contacts are a protectable commodity because goodwill develops between the customers and the employer through its employees whose job it is to meet and converse with the customer while representing the employer." Brown, 291 S.W.3d at 774. Customer "contacts" are defined by the influence an employee acquires over his or her employer's customers through personal contact. Id. In determining whether an employer's customer contacts merit the protection of a non-compete agreement, courts consider the "quality, frequency, and duration of an employee's exposure to an employer's customers." Id.
The Brown court addressed whether the non-compete agreement at issue was enforceable to protect against the unfair competitive use of defendants' customer list. The issue in Brown, as here, turns on whether the customer list was a trade secret. Id. at 776-77. A "trade secret" can be " 'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.' " Id. at 776 (quoting Nat'l Rejectors, Inc. v. Trieman, 409 S.W.2d 1, 18-19 (Mo. banc 1966) ). Some factors to be considered in determining whether certain information is a trade secret are:
(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
Id. (quoting Cont'l Research Corp. v. Scholz, 595 S.W.2d 396, 400-01 (Mo. App. E.D. 1980) ).
In Brown, the court found that the non-compete agreement was unenforceable because it was unreasonably broad as to customer contacts and business information covered. Id. at 779. Specifically, the court found the evidence was sufficient to support the trial court's implied findings that employers, who were commodities brokers and shippers, did not become associated in a customer's mind with the former employee, and therefore, the former employee did not possess the degree of influence over any customer that would justify enforcement, under a "customer contacts" theory of the non-compete agreement. Id. The court relied on testimony from people involved in the industry that demonstrated that, although a trucking dispatcher employee had daily contact with customers, a customer's decision to ship with a specific broker was wholly based on rates and was unconnected to the identity of the dispatcher, dispatcher did not have discretion to approve offers from customers, and dispatcher spoke with between 50 and 100 customers per day and did not develop personal or exclusive relationships with them. Id. at 775.
Here, in arguing that that its customer list was a trade secret, AAA relied on the affidavit testimony of John O'Brien ("O'Brien"), AAA's operations manager. In his affidavit, O'Brien stated that "tractor and trailer mechanics frequently have contact *313 with customers and it is not uncommon for a customer to choose a shop based on their experience with a specific mechanic and not simply the reputation of the shop." O'Brien also stated: (1) that AAA's tractor-trailer mechanics have specialized knowledge and experience that is in high demand; (2) that the competition in the area for recruiting and retaining qualified mechanics is "strong"; (3) that when a former mechanic of AAA leaves for a direct competitor in the area, there is a "strong likelihood" that the customers will send their business to the same mechanic at the new shop because they have an established relationship with the mechanic; and (4) that as a result of this competition, or "poaching," AAA has lost business and customers. Finally, O'Brien stated that, "[i]n exchange for agreeing to the non-compete, Jobe received a $1 per hour raise as consideration, as well as continued at-will employment, access to AAA's customers and equipment, trade secrets, lists of customers, and proprietary information as to those customers, as well as the benefits associated with AAA's strong reputation in the tractor and trailer mechanic industry in the St. Louis area." Although Jobe failed to file a responsive pleading in opposition to AAA's position, we note that Jobe's original affidavit specifically denied that he had any special contacts or trade secrets ("I have no trade secrets or customer lists"). Additionally, as noted earlier, even if the facts alleged in the summary judgment motion are uncontradicted, they must still establish a right to judgment as a matter of law. Miller, 371 S.W.3d at 57.
After numerous memoranda submitted by the parties and following oral argument in this matter, the trial court granted summary judgment only on the basis that the agreement was enforceable because there was adequate consideration given the one-dollar-an-hour pay increase and continued at-will employment. Although not specifically addressed, it is presumed that the trial court found there was a legitimate business interest in upholding the Non-Compete because that was a necessary threshold determination.[4] Here, given the summary judgment record, we find that AAA failed to meet its burden that it had a protectable business interest. The fact that Jobe as a truck mechanic had some form of contact with AAA's customers is not enough to establish as a matter of law that Jobe had contacts of a kind enabling him to influence customers. Neither O'Brien's affidavit nor the attached sample of one such customer list regarding customer Cash On Delivery policies provides evidence as to the "quality, frequency, and duration" of Jobe's specific customer contacts. Moreover, the customer lists attached to O'Brien's affidavit do not prove themselves as trade secrets. See Holzhausen v. Bi-State Dev. Agency, 414 S.W.3d 488, 494 (Mo. App. E.D. 2013) (conclusory statements and legal conclusions, even if uncontroverted, are not "facts" for purposes of Rule 74.04, and cannot form the factual basis for summary judgment). Evidence of purported trade secrets must be sufficiently specific to allow a court to make a determination. Healthcare Servs. of the Ozarks, Inc., 198 S.W.3d at 611. In this case, there is no specificity regarding Jobe's unique training nor the frequency or duration of Jobe's contacts with individually names AAA customers nor his access to proprietary information.
As there are disputed facts surrounding the question of whether Jobe had access to AAA's "trade secrets" and had sufficient contacts with AAA's customers to justify the restriction of trade, we find genuine issues of material fact exist that preclude summary judgment. Additionally, there is *314 insufficient evidence in the record to establish AAA met its burden that Jobe had sufficient customer contacts (evidence as to quality, frequency, or duration) to enforce the Non-Compete and to justify a restriction on Jobe as a truck mechanic. Point I is granted.
Because Point I is dispositive and requires remand, we need not reach the merits of Point II regarding whether AAA tortiously interfered with Jobe's future employment as this issue is dependent on the resolution on remand of whether the Non-Compete Jobe signed was enforceable.
Conclusion
The trial court's entry of summary judgment in favor of AAA is reversed and the case is remanded for further proceedings consistent with this opinion.
Colleen Dolan, Presiding Judge and Lisa S. Van Amburg, Judge: concur

For further clarification, we note "Agreement" refers to the broader eleven-page agreement Jobe signed and that the Non-Compete section addressed in this opinion was a specific section within that agreement.

While the trial court did not specifically find that the Non-Compete protected a legitimate business interest, we presume the trial court found on the grounds specified in the movant's motion for summary judgment and under any theory that is supported by the record. Lucero v. Curators of the Univ. of Mo., 400 S.W.3d 1, 4 (Mo. App. W.D. 2013).

Additional facts will be included as necessary to discuss Jobe's arguments below.

We do not address the issue of consideration as this is relevant only after a resolution of whether AAA had a protectable business interest as a matter of law.